Illinois Public Court Third Division is now in session. The Honorable Justice Margaret S. McBride is presiding. Good morning everyone. Please be seated. People versus Munoz. Before we step up, I would ask that both attorneys do come up to the podium and identify yourselves for the record. All right. Both of you can approach, please. Good morning, Your Honors. Jonathan Easting of the State Appellate Defender on behalf of Mr. Munoz. Mr. Easting, good morning. Good morning, Sue Wong on behalf of the people. Good morning, Ms. Wong. All right. So each of you will have about 15 minutes to present our oral argument. And from that, Mr. Easting, you may save some time for rebuttal. Yeah, I'd like to hold on to about two minutes. All right. Okay. So, Sue Wong, you may take your seats. Mr. Easting, if you are ready, you may begin. Good morning, Your Honors, and may it please the Court. I note that Mr. Munoz has a family present in the courtroom today. The briefs in this case raise two issues about how the confluence of developments in brain science combined with Jason's history of substance abuse, meaning that Jason should have further opportunity to argue for a new sentence. While I expect this Court will have particular interest in what the Illinois Supreme Court's decision in Teeple v. House last year means for all these cases coming back on remand, I'd actually like to start with the second issue in the briefs, which is an ineffective assistance of counsel claim. Probably that's because the briefs between us and the State sort of go past each other as to what the nature of the claim is here, and I'd like to clarify a few things. On that point, wasn't there evidence about his drug use? Did not counsel present that evidence and did not the Court consider that evidence during the trial and then, you know, ultimately at sentencing? This is why I think the People v. King decision is important. Both myself and the State agree this kind of evidence of substance abuse is a double-edged sword, and People v. King instructs attorneys, if you're going to raise this evidence of substance abuse in sentencing, do the investigation that's necessary to give substance, to give, you know, give first to that evidence. And counsel didn't do that. Counsel instead makes the argument relying largely on testimony that happened to come out at trial in the PSI and doesn't go beyond those limitations, when what counsel should have done is look at the science and the petition sites that Skidley has studied that talks about, you know, why the particular history of substance abuse is something like Jason would be particularly mitigating. The counsel additionally should have brought in some of the extraordinary facts of this video. I'm not sure that sentencing counsel even actually reviewed that interrogation video because there's a change of counsel. And some of the facts of what is shown on that video is compelling mitigation. That interrogation ends when my client is being pulled out of a puddle of vomit on the floor because he's going to withdraw. Could I just interrupt you briefly? The trial judge, was the trial judge the same judge who denied the motion to suppress? My recollection is yes, Your Honor, but I'm not certain. Well, does that make a difference? Well, I don't think it does because the motion, that video is clearly part of the record, but it was a part of the record that counsel didn't bring out and emphasize at sentencing. And in particular, counsel's — Well, if the trial judge denied the motion to suppress and had reviewed the video and then also proceeded over the trial in sentencing, his sentencing discussion sort of reflects, you know, extensive knowledge about the case, doesn't it? Your Honor, I'd submit that it's part of counsel's duty to additionally bring in facts, and not just facts that a court might have reviewed months or years before, as to emphasizing particular facts at sentencing. Are you re-arguing that the motions to suppress shouldn't have been granted because the statements weren't voluntary? No, we're not raising that on appeal. We're arguing a traditional Strickland claim on Issue 2, which is that counsel didn't do his duty to investigate and present mitigating evidence. And some of the compelling facts of the video, and there are things that don't really come up that much in the motion to suppress because they're facts about his addiction, are some of that. You mentioned to the officers at the time that he was a regular user of alcohol and cocaine. That was in the video. Yeah, I'll give an example. One thing that is there in the video, but counsel never quite realizes, is that there's use of Seroquel and Rohypnol as drugs of abuse in this case. That's something that later comes out in my client's affidavit, that when the officers are taking him to the hospital for medication, that actually is drug-seeking behavior because he's going through withdrawal. And that's something that's in my client's affidavit, and it's never in the record on direct appeal. But you're really relitigating a motion to suppress here. No, Your Honor, it's a sentencing argument. I mean, it is squarely, it falls squarely within all those U.S. Supreme Court cases, whether it's Rompelaugh or Sears v. Upton, that have dealt with capital cases where counsel has a duty to investigate mitigating evidence, in particular substance abuse. And there's a long tradition of that. In the video that you're referring to, didn't the police officers in fact specifically ask him about, you know, whether he was coherent and, you know, did he understand what he was saying? And, you know, was he in any way impaired by drugs or any other type of substance? They did repeatedly ask him. We're not raising a suppression issue here. I'm raising the issue of what this video says about the mitigating circumstances of sentencing. I am not arguing in this court right now that his statement should have been suppressed. Your client was 26 years old. Yes, that's right, Your Honor. Now, you said you were going to talk about the King case. Yes, Your Honor. In Pemberley King, which is a taprochist from 2000 Illinois Supreme Court, just this kind of issue came up where there was some sentencing evidence of the client's history of substance abuse that would be mitigating because, you know, there's this long tradition of seeing a reduction in moral responsibility and moral culpability when there's a history of addiction. But counsel didn't muster all that evidence. Because it was there, it was treated as aggravating and not as fully mitigating. That's exactly the argument that we are making here, which is counsel should have mustered the science evidence, in addition to the kind of things shown on the video, in addition to the facts that are in my client's affidavit, to treat it as mitigating. But what case supports your claim vis-à-vis a 26-year-old adult who had two prior felony convictions and the court did review this evidence that was presented? Well, Your Honor, there was some evidence presented, but not the facts in my client's affidavit and not any of the science. And that's the core of the claim. But the science has to be attributable to your client. And isn't that what was one of the reasons why it was dismissed, is that although there was a suggestion about drug and alcohol abuse and how that can impact the development of a mind that's younger, and he did testify, providing in the affidavit, that this had been an ongoing alcohol and drug issue. But doesn't that then have to be related to the client? Your Honor, I think the Squigley study does, you know, that study in there does relate pretty well because that study goes up to, it's only participants up to 24 is where they get a cutoff and start the study. And my client just turned 26. But I mean, the scientific proof has to be related. In other words, it was the obligation to present that this scientific evidence specifically was related to this particular defendant. All I can say is that my client is well within the universe of these particular studies, that the details of what. . . I'm going to interrupt you, I'm sorry. But you keep referring to science, but what specifically should counsel have presented? What additional evidence in that area should counsel have presented during the trial? Counsel should have looked at what the neuropsychology now says about what the long-term use of, in his case, alcohol, cocaine, and now we know, seropolin or hypnol, delays maturation and lessens responsibility. The Squigley study talks about, for example, how even adolescent use of alcohol decreases young adult impulse control. That is something that, if we looked at, you know, all these factors, millet factors, we would treat as a traditional category of mitigation. That study also, and there's others that talk about how, you know, useful use of substances creates susceptibility to peer pressure. And this is a case where, you know, part of the State's argument was that Mercado goaded him into committing this robbery. If the lawyer has the choice to decide whether to use something in aggravation or mitigation, doesn't the Court then have the same ability to determine in a particular case whether this is truly aggravating or whether this is actually mitigating? Your Honor, I would say that strategic decisions by counsel are only to any kind of deference when they're made after a complete investigation. And the uncontested allegation here in my client's affidavit is that counsel investigated none of this science. Was this additional evidence that you're referring to specifically, was that part of the petition that included? The Squigley study that I'm talking about is the study that's cited in the petition. Now, we cite some additional studies that have unsurprising consequences, like yes, the history of cocaine abuse also diminishes impulse control. But the Squigley study is there in the petition and is quoted at some length, Your Honor. What difference would it make in the outcome of this case if the lawyer had done all of those things when they didn't do an MRI on his brain? The MRI on the brain will tell you what effect the alcohol has. And if you didn't have the MRI, the fact that there's a theory out there, what difference would it make? Your Honor, I submit it's more than a theory. We have, you know, science that says people in my client's situation have this kind of history. And I point to cases like... Some do and some don't. The question is, without the MRI, you're just rasping at straws. It's not going to change anything. Your Honor, and this might move into what's the first argument in the briefs, is if this court case was on remand, I would certainly, you know, suggest to counsel that they move to do that. My client, unfortunately, is indigent, doesn't have the, you know, the capital to go. What about your prejudice argument? How can you actually say that there would be a difference in the outcome? There were multiple witnesses at trial, weren't there? Yes. Multiple eyewitnesses. Yeah. And then the defendant himself testified and said he was, got a little nervous, thought that he was under attack, and he fired the weapon. That's right, Your Honor. So, I mean, how are you going to show that this information, which the judge considered, would actually change the outcome on a retrial? You do have to say... Well, Your Honor, it's a resentencing.  One day. One day is prejudice. Any amount of sentencing has Sixth Amendment. That's the United States v. Glutter. We do not need to show that this sentence violated the Eighth Amendment portion of penalty clause. Judge, but I'm talking about your argument on ineffective assistance. It's the effective assistance at sentencing counsel. And prejudice is a reasonable probability that a reasonable judge would have done a sentence that was a day less. So 74 years and 11 months would be a Sixth Amendment had this been presented. It would have been a Sixth Amendment violation in this case. Do you think the sentencing, that there's some evidence or suggestion in cases that the judge would have sentenced differently? Despite all the evidence that was presented? Your Honor, I would say... Doesn't the Court consider what happened at trial and the evidence presented in sentencing? Of course it does. But it did not consider the addition, the counsel's failure to give this more substance. The Court didn't consider those new facts in my client's affidavit. The Court didn't consider any of the science because counsel never did the work to give the mitigation substance. And that's what King directs. Now, I'd also like to talk briefly about the consequences of the Illinois Supreme Court decision to keep the house. Well, before we move away from that... We were going to handle on that. So we know. We understand that case. They said that despite the fact that there was no specific evidence related to Mr. House, that that was premature. And they sent it back for a second stage proceeding. I mean, this is the panel of the original appellate court decision. So we're all familiar with it. Plus, we're familiar with the Supreme Court decision. So... Yeah. Tell us more then. Well, before we move into mitigation, does anyone want to go out away from mitigation? One other question. So it's counsel's, you know, up to counsel to determine, you know, what to present in terms of mitigation and so on and so forth. But it's up to the circuit court to weigh that evidence and determine it. And here in pre-sentencing, the court clearly said that your client had the capability, the ability, and the capacity to understand what he was doing, how he conducted himself, and he chose not to do so. So, you know, honestly, even though counsel did bring up the fact about the drug use, the circuit court determined that's fine, but I'm not considering that in terms of mitigation. Well, the U.S. Supreme Court would direct that we don't look at the proclivities of the particular sensor in the case. We look at a hypothetical objective judge. That's in Strickland v. Washington, and it's the standard by which all these capital mitigation cases have been judged. And I'd also point out that Peabody King is similar. There it was, you know, the failure to give substance to it as to why it wasn't treated as mitigating. Here, that's the prejudice, that the circuit court did treat it as aggravating, when had the science been brought in, had the additional facts been brought in, it should have been treated as mitigating. And as to what do we do after House, I would say, I would suggest this case is just like House. We're on a partly developed record, raising a proportionate penalties claim based on the why my client's circumstances are like those of a juvenile, and should have the exact same treatment of House. So at the very least, it should go back for second stage proceedings. If the Illinois Supreme Court had wanted to issue another supervisory order in House and keep it from having precedential effect, the Illinois Supreme Court would have done that. I think it had two or three supervisory orders before the 2021 opinion. Instead, the Illinois Supreme Court did set a general rule for these kind of cases that we should be sending them back to second stage proceedings. And that part of the decision is precedent that this Court should follow. So if this Court believes, as Justice Gordon says, that we need more facts to be able to raise a proportionate penalty claims to show why my client is like a juvenile, second stage proceedings should be due under House to be able to give them the opportunity to develop those facts. Anything further at this time? You'll have to rebuttal, of course. No, Your Honors. And I ask you that you reverse the dismissal of my client's post-conviction petition and remand for second and third stage post-conviction proceedings on each of the claims. Thank you, Your Honors. All right. Thank you. Mr. Wong. May it please the Court. I'm Sue Wong here on behalf of the people. In regards to Petitioner's claim regarding the ineffective assistance of counsel, when we talk about the prejudice prong, the Strickland analysis, the mere availability of a lesser sentence is insufficient to make a substantial showing. What actually needs to be made is a substantial showing of actual prejudice. And here, considering the totality of the evidence adduced at trial, as well as the aggravating nature of the Petitioner's offenses and the evidence that trial counsel actually presented in mitigation regarding Petitioner's drug abuse and alcohol abuse, the Petitioner can't make a substantial showing of prejudice or actual prejudice accruing from counsel's failure to present cumulative information. For instance, the affidavit about Petitioner occasionally abusing his girlfriend's prescription medication and that he was experiencing symptoms of withdrawal from cocaine and alcohol during the custodial interrogation. Didn't he say he was hungover? Yes. Okay. And your interpretation of the video is quite different from opposing counsel, wouldn't you say? Yes. Isn't that what our interpretation of the video is? Is it your argument that for most of the first few hours, there's really no indication that he was under the influence of alcohol or drugs or that he was withdrawn from some sort of substance abuse? Isn't that kind of what you're saying, that at some point he actually goes to the hospital? But it's unclear what medication was he going for? Right. Now, Petitioner himself is very clear in saying that to the officers, I'm not dope sick. Right. Multiple times. I'm simply hungover. Yeah. And our position is that cumulative evidence of physical withdrawal symptoms, as well as the pre-sentence investigation report, actually contains Petitioner's self-reported history of long-term drug and alcohol abuse.  And that's similarly reflected in the self-reported statement that he was under the influence at the time of the offenses. Well, is there any authority that really suggests that this 26-year-old adult should get the benefit of the Miller protections, either under the Eighth Amendment or the proportionate penalties? I mean, we're focusing on the proportionate penalties clause, but is there any case law? There is. The current jurisprudence does not support, you know, the extension of Miller to someone who is 26 years old. And, in fact, in Robinson, this Court stated that a defendant who is 24 years old with a history of untreated mental illness was well past that range. And in that decision, actually, the issue was brought up before the trial court in the context of a motion to reconsider a sentence. Is the testimony of the defendant at trial, does that actually rebut this claim of long-term alcohol or cocaine or any other abuse? He testified before the jury, didn't he? Yes. Was there any evidence in the record that he suggested that that night he was even he had the wherewithal to, I mean, he had contact with multiple people and then he was given a gun that he was going to try to sell or he felt he was being forced to try to sell. But then he said that, you know, he kind of like thought that he was going to be shot at. So he kind of, well, isn't that sort of a summary of what he said? Did he ever suggest that he was completely intoxicated or under the influence of cocaine or he'd been on a bender for months and that these actions were, you know, totally influenced by consumption of drugs or alcohol? There's no suggestion that there was, that there's no suggestion from the petitioner that what he was feeling and what he was in his testimony exhibiting in his behavior reflected the hallmark traits of youth. For example, impetuousness, an inability to assess risk and consequence and things like that. Well, was there any other evidence in the record from all these other eyewitnesses who were there, friends of his, non-friends of his, victims? Any other evidence to suggest that when he actually pulled the trigger, that this was all the result of his long-term alcohol and drug abuse? To my recollection, no, Your Honor. So is this record rebutting the claims now? Our position is that it rebuts the claim that petitioner was under because of his long-term alcohol and drug abuse and that he was affected or it had, there was an effect on his development such that he had the mental capacity of a juvenile. What were his two prior felony convictions? I don't recall. Was one of them involving an attempt armed robbery or an armed robbery? Actually, I don't remember. I have a question regarding the video. During the questioning, wasn't he actually taken out of the room because he had to be transported to the hospital, I think on both occasions, the first time and the second night? Yes, he was taken out. I'm sorry, I don't want to interrupt, but wasn't he also vomiting? Yes, and he was given medication. It was unclear exactly what medication. We thought it was anti-nausea medication or some other medication, and there's really nothing in his own affidavit to explain what medication he was taking or not, is there? That's correct. And there are, for instance, no hospital treatment records or anything like that. There's no suggestion that... So did that show his lawyer was a little bit not doing his job? Again, I can't speak to it to the extent that I'm speculating that there would be, you know, treatment records at minimum when you go to the emergency room or the hospital for, especially under, you know, escort from law enforcement. And then during the interrogation and the questioning, wasn't he also repeatedly asking to take a break, and in fact was taking naps and sleeping for, you know, for a period of time during the questioning? Yes, he was allowed time during that duration to rest, and, you know... So doesn't all that, you know, with going to the hospital, vomiting, you know, being somewhat lethargic, let's say, doesn't that also maybe call for a different interpretation in terms of when you're looking at the video that maybe something else might have been going on? Even though he was denying that he wasn't dopesick, maybe in reality he was dopesick. He did mention, if I recall, that he was hungover, and, you know, he was very clear at the same time that he was not dopesick, and the medication that, you know, we could only speculate as to what medication he was given when he went to the hospital. Based on the video, it appears as though he seemed better when he came back from the hospital after being given whatever medication was administered to him. Now, again, we're talking about, you know, the additional information that opposing counsel mentioned is in regards to, you know, petitioner's allegation that he has a long-term history of alcohol and drug abuse. He's just simply, this is just additional or cumulative information that he's abusing yet an additional substance. And in this particular instance, it was Seroquel and Rohypnol. Just to follow up on Justice McBride's question with regards to this factor about the drug use, maybe creating a mindset in the defendant in terms of, you know, taking him back in time. There are no cases on point on that issue, correct? No. So, in regards to the, you know, the first issue, you know, as opposing counsel has briefed, you know, House and actually Harris, you know, they both involved. In House, the defendant is 19. In Harris, the defendant is 18. And in those circumstances, the record was not adequately developed in the trial court as to defendant-specific acts or specific facts and circumstances. And by definition, an as-applied constitutional challenge is dependent upon the facts. So by reason, the party who's making that challenge bears the burden of presenting an adequate record. And here, the Petitioner had that opportunity at the second stage of proceedings to develop that factual record. In fact, he gave specific facts and circumstances about his long-term drug use, and the trial court examined Petitioner's constitutional arguments in the context of the record that he submitted. And the record was actually adequate to allow the trial court to make a determination as to whether the Petitioner made a substantial showing of a constitutional violation to warrant an evidentiary hearing, because that, you know, we're at the second stage of proceedings here where that showing has to be made. And again, at the second stage, the court is looking at the legal sufficiency of the pleadings or the allegations. At sentencing, the court said that based on the pre-sentence investigation, the defendant had the capacity and ability of knowing what he was doing at the time. But doesn't that kind of support the defendant's argument here that counsel here did not present enough evidence to establish whether or not he was affected by a long-term use of drugs? Well, because the use of drugs or drug addiction can be a double-edged sword, it can go either way, it's speculative that more of that type of allegedly mitigating evidence would take the scale to lead to a lighter sentence. And in fact, you know, there's a Supreme Court case, Glover, that talks about, you know, the reply brief had mentioned, you know, any sort of lesser sentence, however small, you know, would be, you know, an indication that regarding trial counsel's deficient performance. But actually, Glover, when you read the opinion, it actually rejects the idea that when you look back in retrospect, when a court looks retrospectively at counsel's performance, that the trial strategies in retrospect might be criticized for leading to a harsher sentence. That specific argument has been rejected because the mere availability or possibility of a lesser sentence, even if it's one day, is insufficient to make that substantial showing, because what is required is a substantial showing of actual prejudice under Strickland. Anything further, Mr. Waddle? No, that would be all. All right, thank you. We'll hear from, in rebuttal, from Mr. Easting. Mr. Easting, did the trial judge really ever reject the facts that were presented? In other words, although the court didn't find those facts aggravating, was there any suggestion that it disavowed the fact that your client had a history of alcohol and drug abuse since the time he was 17 years of age? Your Honor, the court, in fact, treated it as aggravating because counsel didn't bring in the science that would have given it the mitigating force. So you're saying he said that you don't back this up? Or did he say, as Justice Reyes just recently pointed out, that he said that at the time that these offenses occurred, you had the wherewithal to know what you were doing? Yes, it's that, Your Honor. He treated it as if he was trying to argue some kind of voluntary intoxication defense and thus treat it as aggravating and didn't look at what we now know about the combination. But isn't the record supportive, though, of that whole conclusion by the trial judge, based on the defendant's testimony and the testimony of all the other witnesses at trial, that this really wasn't an alcohol or cocaine-induced homicide? Your Honor, I would submit all the evidence in trial includes my client's statements that he was jumping and he was doing this because he was craving the rock. He didn't say he was jumping because of alcohol or drugs. He said he was fearful. He thought he was going to be shot at. Didn't he? That's true. It was partly that. The word comes up because it's first suggested by a detective in that questioning. So he ends up using it several times. And this also occurs shortly after he's using cocaine with his friend. And that's the SAM that's referred to in his testimony in the record. Well, you know involuntary intoxication does not exist in Illinois. That's correct. We're not arguing voluntary intoxication. We're arguing that my client, if this had been correctly presented, would have had one day less of a sentence. That is all we need to be able to show a Sixth Amendment violation. And as far as the counsel didn't present it. If all you're saying is that all you have to show is that the judge would give him one day less, why wouldn't that be available to every single defendant? Because any judge could change it from one day to the next. I mean, I sat and sentenced people, but someone could say that someone would have been more harsh than I was. Or they could have been more lenient, although that probably wouldn't be the case. Do you see what I'm saying? Your position is suggesting that one day is like, I mean, I don't understand the logic. And counsel doesn't agree with your interpretation? He says Glover says exactly the contrary. Your Honor, when the U.S. Supreme Court reversed the Seventh Circuit in Glover for saying that there's no de minimis prejudice, it definitely did hold that any time in prison it has Sixth Amendment significance for purposes of prejudice. Until recently, we used to argue fines and fees cases, and occasionally you'd see one of these $5 fine go away on ineffective assistance. But what do you support your position with that here, that you've shown that he could get one day less? What is it? This is the importance of counsel's failure to investigate the science of that squiggly issue. But what case, what authority or support do you actually have that suggests that some other judge would have given one day less? Your Honor, I would say I believe there's three or four U.S. Supreme Court decisions in there, including, for example, Sears v. Upton, which is a capital case that reversed death sentence on a failure to investigate substance abuse. I'm just asking you, what reasoning do you have? What support do you have in your brief for the cases that says another judge would have given him one day less? Well, it's an objective judge, Your Honor, an objective judge. I mean, this judge, having looked at — because that would be the obligations under Illinois sentencing statute under the proportionate penalties clause. But what are you saying would make that objective judge give him one day less? Because had the science been presented, it links in to all these traditional factors in mitigation. This is detailed in the briefs, such as the diminution of impulse control, such as the susceptibility to peer pressure. And there's a long history, going back to Robinson v. California, and this is all detailed in the briefs. Any 26-year-old adult offenders? Any 26-year-old adult defendant who can show my client's particular history. What cases are you suggesting we review for a 26-year-old adult? In terms of ineffective assistance, most of the — almost all of those cases are going to involve adult defendants, often much older than my client, because they're capital cases that are being adjudicated by the Illinois Supreme Court and the U.S. Supreme Court. So you can look at King, you can look at Rompel, Lovey, Beard, you can look at Strickland itself, you can look at Sears v. Upton. In terms of a house-like argument, well, the Illinois Supreme Court says, we just have to show that in circumstances unlike that of a juvenile. So this court — The house was — it's been distinguished on multiple grounds. Yes. One of the more significant was the facts surrounding that, that the defendant wasn't actually at the scene of the shooting when two people were murdered. He wasn't physically present. That case has been distinguished multiple times because facts in-house are pretty much unlike any of the other decisions that followed it. I mean, you're aware of that, aren't you, that that was a 19-year-old? He was a month past being 18. He wasn't actually present for the actual murders that occurred. The Supreme Court in-house could have said, we're going to draw a line at 19 and a half for accountability. All right. Instead, they said, we're not going to draw lines at all. We're going to give each defendant the opportunity to show why his circumstances are like that of a juvenile. And we present science at the state level. You're saying Thompson and — remind me of the other case. Thompson, Harris, and the house — They suggested in those decisions that any adult person could raise the same kind of bill or claim. Of course, it depends on the case. They indicate that line drawing is arbitrary. If they — you know, those are decisions that came with people under 21. Give us the language in Harris. Your Honor, Harris talks about how the evolving science of juvenile — Juveniles. — brain development applies to a young adult defendant. All right. Zuma, which followed Harris, talks about whether something would exhibit the characteristics of a juvenile. Now, in all those cases, they could have said, and there's decisions that do this, we're going to redraw the line. Don't they refer to juveniles and young adults? Yes, and my client of 26 is a young adult. There's no line — yeah, there's been lots of opportunities for Illinois Supreme Court to say, we are going to go back to — Is there an Illinois legislature of which has been developing the case law after House that they've suggested that 25-year-olds are young adults? Or have they actually told us what they think, that a young adult is somewhat under 21? And here, this is going to get to a rather subtle point, which is there's parole legislation that talks about 21. There's cases like Savage, which was a confluence of youth and substance abuse at 22, and there's Clark at 24. That is, if we're doing a categorical approach, and we're looking at what the evolving standards of decency, something Eighth Amendment-like for the Proportionate Penalty Clause, then we'd really be relying on the consequences of what the legislature said. But that's not what the Illinois Supreme Court has done. It hasn't said we're going to draw the line at 21 or rely on just, you know, the spirit of the legislature. Instead, it's looking to whether a defendant has circumstances like those of a juvenile, and that's a fact-bound question that isn't solely set by what the defendant's birth date is. But didn't Savage also indicate that the defendant here might have been more susceptible to peer pressure? We don't have that here in this case. I would submit that this record, especially when you look at that video, certainly shows an offense that's a consequence of her peer pressure. Whether you read my client's testimony or the video confession, it talks about how Donald Ice Mercado has goaded him into the shooting. Now, Mercado denies, you know, being accountable for a shooting, you know, when he takes the stand for the State. But it's pretty clear from that, at least that's my client's belief, is that he was susceptible to it. And that scleral study also talks about how this kind of chronic alcohol use, starting as a juvenile, makes one susceptible to peer pressure. So there is evidence in the petition that has never been brought out and should have been brought out at the original sentencing as to why my client would be more susceptible to peer pressure, Your Honor. Thank you. I've got a couple of questions for you. Yes, Mr. Squirt. The first question is, you would like us to write that when a person is under the influence of alcohol and drugs, that that's a mitigating factor. Is that what you want us to write? I would like you to follow the several opinions set in the opinion. No, no, no. Just answer my question. Yes or no. Would you like us to write that, that that's a mitigating factor? In this case, it's a mitigating factor. Okay. You say it's a mitigating factor in this case. What evidence is there that this is a mitigating factor? Isn't it true that scientifically when a person is on drugs and alcohol, it calms them down, not makes them more aggressive? Well, Your Honor, the science would indicate lack of impulse control and things like that. But more important here is drug use creates the prospect of rehabilitation. You know, my client has advanced since he was this 26-year-old. He recently got a master's degree, and we'd love the opportunity to bring in all that rehabilitative evidence to show that he's overcome that drug use. That's why it's not like intellectual disability. It's not like a permanent feature. It has the prospect of rehabilitation, and my client deserves the opportunity to prove that he has rehabilitation. Yes, but you have no case law in this country, really, that shows that that's a mitigating factor. It could be an aggravating factor. Sometimes it's mitigating. Sometimes it's aggravating. It's up to counsel to muster the scientific facts so it's mitigating. So there's no case law that shows that that's a mitigating factor. There's no case law that shows that this case would be any different. Here's a guy who maliciously goes and kills somebody. He shoots him. Your Honor, I would indicate that's true. He shoots another man. And he's always on drugs, and he's on alcohol, and he'll be on drugs and alcohol his whole life. He's not on drugs and alcohol today, Your Honor. Well, but maybe he was in prison. He was grown up, and he showed the prospect of rehabilitation. He was in prison. But if he could get it, he did it. And I would say that's not an accurate characterization of my client today, Justice Court. Okay. Well, maybe not. Maybe not. The question is, I don't see any authority where you take somebody who is, you know, over the age of 25 years old and try to create him to be a minor, a juvenile. Your Honor, so far the case has gone up to 24. We think we can show that he's, like, a juvenile. What case has gone up to 24? There's a case on Clark that's now in the Illinois Supreme Court. Savage was 22. We're familiar with Savage. What's the case that's the 24-year-old in the Illinois Supreme Court? I apologize, Your Honor. I believe it was concurrence or dissent that took the position. Let me ask you this question. What were his two prior felony convictions? There was a PSMV and, I believe, an attempt on robbery, Your Honor. And you'll note that. So didn't the court take that into account, that this person had two previous felonies and one of them, at least, was when he was past the age of 17, if I'm not mistaken? Yeah. I believe one is an adult because it was used as a – it came up as a possible Montgomery impeacher. The court did take that into consideration. But we're talking about the difference between, you know, a 35 minimum to a natural life and he has a de facto natural life term. Isn't maybe that the problem here instead of what you're arguing? This is just another life sentence. Yes, this is a – it is an effective life sentence. Is the problem – is there a problem with the fact that life sentences are doled out rather routinely because of the legislature's decision that the minimum and maximum for murder, 20 to 60, if you use a handgun, there's a mandatory add-on of 25. So that's what the legislature has determined. Courts follow it. But 45, you know, is 45. Yeah. I mean, under truth in sentencing, it's really kind of like a life sentence no matter how you slice it. Isn't it? I mean, if you're 20 years old and you get 45, you know, you're 65. A lot of people, their health in prison deteriorates. Of course, a lot of people's health deteriorates outside of prison. But my point is that maybe the issue here is addressing the legislature's mandatory sentencing. Because even with the minimum, 20 and a handgun, you're doing 45. And I'd acknowledge my client here is asking for a chance to show he should get out at younger than the 101 or 102, that there is a meaningful difference between 65 and 102, Your Honor. And even if we only have that opportunity, I would welcome the chance to be able to show that for my client. All right. Thank you, Mr. Easting. Anything further to find out, judges? And we thank you for your arguments today. And I think we have to take a recess before we start the next case. So court is at recess.